UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MICHAEL HILL,

                Plaintiff,

   v.

WELLS FARGO BANK, N.A., *et al.*,

                Defendants.

Case No. 2:18-cv-01350-MMD-BNW

ORDER

**I.    SUMMARY**

This case arises out of an alleged failure to modify a home loan. Plaintiff Michael Hill sued Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank National Association ("U.S. Bank") after they foreclosed on his home despite alleged promises not to foreclose after Plaintiff repeatedly explained to Defendants' representatives over the phone that his house was essentially uninhabitable because it was constructed of 'toxic Chinese drywall' and included a faulty heating and cooling system. (ECF No. 48 ("FAC").) Before the Court is Defendants' motion to dismiss Plaintiff's FAC for failure to state a claim as to three of Plaintiff's four asserted claims (the "Motion").[1] (ECF No 57.) Because Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel fail as a matter of law—and as further explained below—the Court will grant the Motion.

///

///

---

[1] The Court has also reviewed Plaintiff's response (ECF No. 67), and Defendants' reply (ECF No. 68).

## II. BACKGROUND

### A. Allegations in the FAC

Plaintiff purchased the property located at 3432 Big Stomp Court, Las Vegas, Nevada, 89129 (the "Home"). (ECF No. 48 at 2.) To do so, he obtained a mortgage from the Concord Mortgage Company for $191,760.00 ("Loan"). (*Id.*) The beneficial interest in the Loan was assigned to Defendant U.S. Bank. (*Id.* at 2-3.) Defendant Wells Fargo purchased the servicing rights to the Loan. (*Id.* at 3.) Plaintiff noticed a chemical odor circulating throughout the Home after he purchased it, which adversely impacted his health. (*Id.*) Between 2006 and 2010, the Home's builder and Plaintiff discovered issues with the Home's forced air units, and that it contained "hazardous-to-health Chinese Drywall, as well as otherwise defective and toxic drywall." (*Id.*)

Beginning on February 16, 2010, Plaintiff communicated with Wells Fargo about the issues with the Home—he told a Wells Fargo representative that they were forced to leave their Home because its toxic environment was harming their health. (*Id.*) Plaintiff "pleaded with Wells Fargo that, while he could afford his mortgage payments and he could afford alternative accommodations, he could not afford them both simultaneously." (*Id.*) Over the next several years, he spoke with different Wells Fargo representatives who made him explain his story each time he called. (*Id.* at 4.) At one point,[2] a Wells Fargo representative told Plaintiff Wells Fargo would not foreclose on his Home, take any adverse action against him, or require him to submit more financial information to Wells Fargo. (*Id.*) In 2013, Wells Fargo representatives pressured Plaintiff to say he still lived in the Home on a "Request for Mortgage Assistance Form," even though he had moved out. (*Id.*) Wells Fargo called Plaintiff on the phone even though he asked that all

---

[2]There is a discrepancy in the dates alleged in the FAC. Plaintiff alleges he first contacted Wells Fargo to discuss the issues with the Home on February 16, 2010 (ECF No. 48 at 3), but also alleges that in "early 2009, Wells Fargo assured [Plaintiff] that it would not require him to furnish any further financial information and that Wells Fargo would not seek foreclosure, nor take any detrimental action against [Plaintiff], nor his defectively built home." (*Id.* at 4.) The Court will address this discrepancy in more detail *infra* in Section IV.

2

communications with him be in writing. (*Id.*) Wells Fargo also "used Mr. Hill's refusal to perjure himself on the Request for Mortgage Assistance Form as an excuse to not undergo Nevada required mediation." (*Id.*)

"Despite its repeated assurances that it would not initiate any adverse action until after [Plaintiff's] home was repaired, Wells Fargo foreclosed on the Home on January 5, 2017." (*Id.*) Plaintiff asserts claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of NRS § 107.540; and (4) promissory estoppel. (*Id.* at 4-10.)

### B. Procedural History

Plaintiff initially filed this case in state court. (ECF No. 1-1.) Defendants removed it to this Court. (ECF No. 1.) Plaintiff's Complaint included claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty against Wells Fargo; (4) violation of Nevada Foreclosure Mediation Rules; (5) violation of NRS § 107.540; (6) negligence, negligent hiring, retention, and supervision; (7) economic duress; and (8) declaratory relief. (ECF No. 1-1 at 6-14.) Defendants moved to dismiss the Complaint, and filed a corresponding request for judicial notice.[3] (ECF Nos. 5, 6.) The Court held a hearing on that motion, where the Court granted in part and denied in part Defendants' motion to dismiss, and granted the request for judicial notice. (ECF No. 45.)

Per the Court's order at that hearing, Defendants submitted (ECF No. 54), and the Court accepted (ECF No. 56), a proposed order granting Defendants' motion to dismiss and request for judicial notice. The Court specifically dismissed most of Plaintiff's claims asserted in the Complaint with prejudice. (*Id.* at 2.) However, the Court granted Plaintiff leave to amend his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of NRS § 107.540. (*Id.*) Plaintiff's FAC followed (ECF

---

[3]Defendant MTC Financial, Inc. also moved to dismiss the Complaint. (ECF No. 14.) The Court also granted that motion to dismiss with prejudice. (ECF Nos. 45, 53.) Defendant MTC Financial, Inc. is therefore no longer a party to this case.

3

No. 48), where, as noted, Plaintiff alleges violation of those three claims and a claim for promissory estoppel (*id.*). In their Motion, Defendants move to dismiss Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel, but not for violation of NRS § 107.540. (ECF No. 57.)

After Defendants filed the Motion, the parties filed a joint request for a settlement conference. (ECF Nos. 60, 69.) The Court eventually granted that request. (ECF No. 71.) The settlement conference occurred on July 10, 2019, but did not result in settlement. (ECF No. 79.)

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does

not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). That is insufficient. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

## IV. DISCUSSION

As noted, Defendants move to dismiss three of the four claims Plaintiff asserts in the FAC. The Court addresses Defendants' Motion as to each of the three claims in turn, below. The Court will grant the Motion.

### A. Breach of Contract

A breach of contract claim requires a plaintiff to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage because of the breach. *See Saini v. Int'l Game Tech.*, 434 F. Supp 2d 913, 919-20 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). To create an enforceable contract there must be an "offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citation omitted).

Defendants argue Plaintiff's breach of contract claim should be dismissed for a second time because Plaintiff fails to allege he provided adequate consideration for a modified agreement, and because Plaintiff's claim is barred by the statute of frauds. (ECF No. 57 at 4-5.) Plaintiff responds he provided adequate consideration for Wells Fargo's agreement not to foreclose on his Home—saving Wells Fargo foreclosure costs, and giving Wells Fargo the opportunity to require Plaintiff to take certain actions as part of a loan modification. (ECF No. 67 at 4-5.) The Court agrees with Defendants that Plaintiff fails to allege he provided adequate consideration for Wells Fargo's agreement not to foreclose.

5

Plaintiff specifically alleges that terms "added in writing" to his mortgage agreement with Defendants after its execution provided that Wells Fargo would not foreclose on his Home. (ECF No. 48 at 4-5.) He further alleges the consideration he provided for this agreement was that Wells Fargo could retain a customer, and he could continue paying his mortgage and fees that had accumulated. (*Id.* at 5.) And he alleges that Defendants breached that agreement when they foreclosed on his Home. (*Id.* at 5.)

The Court will dismiss Plaintiff's breach of contract claim for two alternative reasons. First, Plaintiff's alleged consideration is inadequate. Plaintiff was already obligated to pay his mortgage and corresponding fees when he entered into the modification agreement with Wells Fargo. (ECF No. 6-1 at 5, 11.)[4] Thus, agreeing to pay his mortgage and corresponding fees cannot, and does not, constitute adequate consideration for the modification agreement. *See Jordan v. Bank of Am.*, Case No. 3:13-CV-00058-MMD, 2013 WL 5308268, at *3 (D. Nev. Sept. 19, 2013) ("Plaintiffs were not undertaking any action that they were not otherwise required to perform and thus the payment is not consideration for a contract not to foreclose."); *see also Nurczewska v. Fed. Home Loan Mortg.*, 528 F. App'x 710, 711 (9th Cir. 2013) (affirming dismissal of first amended complaint with prejudice and finding the plaintiff's breach of contract claim failed for lack of consideration). The alleged modification agreement is therefore not a valid contract. *See May*, 119 P.3d at 1257 (stating that a valid contract requires consideration). That means Plaintiff cannot establish the first of three required elements of a breach of contract claim. *See Saini*, 434 F. Supp 2d at 919-20 (providing that the existence of a valid contract is one of the elements of a breach of contract claim).

Second, Plaintiff effectively pleads himself out of court with fatal contradictions within his FAC. *See Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("[A] plaintiff may plead herself out of court.") (citation omitted). To start, Plaintiff alleges the modification agreement with Wells Fargo was in writing, but the factual

---

[4] The Court already took judicial notice of this document. (ECF No. 56.)

allegations supporting that claim do not mention the written agreement, and instead appear to suggest the agreement was oral. (*Compare* ECF No. 48 at 4 (providing that the agreement was in writing) *with id.* at 2-4 (failing to mention a writing when describing the purported modification).) Moreover, Plaintiff alleges that he first reached out to Wells Fargo in February 2010 to tell them about the toxic environment in his Home, but then alleges that Wells Fargo entered into the modification agreement not to foreclose in early 2009.[5] (*Id.* at 3, 4.) Plaintiff does not explain why Wells Fargo agreed not to foreclose approximately a year before he reported any issues with his Home or stopped making payments on his mortgage. But the logical answer is that Wells Fargo could not have. Unfortunately for Plaintiff, his factual allegations as to his breach of contract claim are fatally inconsistent. *See Weisbuch*, 119 F.3d at 783 n.1 (explaining that a plaintiff can plead facts that establish they cannot prevail on their claim). Thus, even if Plaintiff had alleged adequate consideration, his breach of contract claim would fail as a matter of law.

The Court will thus dismiss Plaintiff's breach of contract claim.

### B. Breach of Covenant of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff bases his claim for breach of the implied covenant of good faith and fair dealing on an alleged breach of duty by Defendants when they repeatedly asked him for information about the toxic drywall in his Home, and foreclosed on his Home despite repeatedly assuring him they would not foreclose on his Home until it had been repaired. (ECF No. 48 at 6.)

To establish a claim for contractual breach of the implied covenant of good faith and fair dealing, a plaintiff must allege the existence of a valid contract and a breach of the implied duty of good faith and fair dealing by performing in a manner that was unfaithful to the purpose of the contract. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995); *see*

---

[5]To the extent this inconsistency was a typographical error or mere oversight on Plaintiff's counsel's part, the Court notes it persisted from the Complaint through the FAC. (ECF Nos. 1-1 at 5, 48 at 3-4.)

7

*also Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 923-24 (Nev. 1991). A plaintiff must also establish that the defendant intentionally breached the intention and spirit of the agreement. *See Morris v. Bank of America*, 886 P.2d 454, 457 (Nev. 1994) (*citing Hilton Hotels*, 808 P.2d at 922-23).

Defendants argue this claim should be dismissed because there was no valid contract to modify Plaintiff's mortgage, and the only valid contracts—the note and deed of trust—gave Defendants the right to foreclose on Plaintiff's Home. (ECF No. 57 at 6.) Plaintiff counters this claim should not be dismissed because a plaintiff may simultaneously plead both breach of contract and breach of the implied covenant of good faith and fair dealing in the alternative under Nevada law. (ECF No. 67 at 6-7.) The Court agrees with Defendants in pertinent part.

Specifically, the Court will dismiss Plaintiff's claim because, as explained *supra* in Section IV.A, there was no enforceable contract between the parties requiring Defendants to modify the loan. A valid contract is a required element of a claim for breach of the implied covenant of good faith and fair dealing. *See Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1149-50 (D. Nev. 2017), *aff'd*, 758 F. App'x 599 (9th Cir. 2019) (specifying that the existence of a contract is an element of this claim). Moreover, Plaintiff does not even allege, much less argue, that Defendants were required to modify the terms of his mortgage under the documents governing that mortgage. Similarly, Plaintiff does not allege or argue that Defendants were not allowed to repeatedly ask him for information about his toxic drywall issues. Plaintiff has therefore failed to plead any plausible facts that Defendants breached the intention or spirit of the contracts governing his relationship with Defendants as to his mortgage.

Plaintiff cannot plausibly state a claim for a contractual breach of the implied covenant of good faith and fair dealing. The Court will dismiss this claim.

**C. Promissory Estoppel**

The Court will also dismiss Plaintiff's promissory estoppel claim. To state a claim for promissory estoppel under Nevada law, Plaintiff must show four elements exist: "(1)

the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that that party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984).

Plaintiff alleges in relevant part that he received correspondence on January 4, 2017 in response to his written request for more loan modification options as discussed in a previous phone call with Jeremy Kerns "from Leesa Whitt-Potter, indicating that Wells Fargo had received his correspondence and [noting] 'We except [sic] to complete our research and provide you with the results on or before January 19, 2017.'" (ECF No. 48 at 9.) However, Defendants foreclosed on the Home the next day—January 5, 2017. (*Id.*) Plaintiff alleges he understood from this interaction, and preceding interactions, that his Home would not be foreclosed on until Wells Fargo completed its investigation, but it was. (*Id.* at 9-10.)

Defendants argue that Plaintiff's promissory estoppel claim premised on mere promises to modify a loan must be dismissed. (ECF No. 57 at 7.) Defendants' argument has a few components. Defendants first argue that loan modifications must be in writing. (*Id.*) Because an oral contract cannot modify a loan, any reliance on an oral promise to modify a loan is unjustified. (*Id.*) Therefore, it was unreasonable for Plaintiff to expect his Home would not be foreclosed on when he had merely received oral promises to negotiate a loan modification, and not the written document required to receive a loan modification. (*Id.* at 7-8.) Plaintiff counters that one of the cases Defendants rely on in support of this argument is distinguishable, and that he relied to his detriment on Wells Fargo's promise that they were investigating loan modifications at the time his Home was foreclosed upon, because he otherwise would have tried to stop the foreclosure. (ECF No. 67 at 7.)

The Court again agrees with Defendants. Plaintiff has only alleged he relied on a promise to further negotiate a loan modification, not a written loan modification signed by all relevant parties. (ECF No. 48 at 8-10.) This is insufficient to state a claim for promissory

estoppel under Nevada law. *See Lalli v. Bank of Am., N.A.*, Case No. 2:12-cv-1221-JCM-PAL, 2014 WL 334810, at *3 (D. Nev. Jan. 29, 2014) ("A failed negotiation is not a basis for promissory estoppel. Because no agreement was reached on the loan modification, this cause of action must be dismissed."); *see also Duarte v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-00371-RCJ, 2013 WL 5236565, at *2 (D. Nev. Sept. 16, 2013) ("Insofar as Plaintiffs mean to imply a claim for promissory estoppel based upon Wells Fargo's continuation of foreclosure proceedings while negotiating a modification, Plaintiffs simply do not allege any promise by Wells Fargo to modify or forbear foreclosure but only ongoing negotiations.");[6] *Gonzalez v. Bank of Am., N.A.*, Case No. 2:13-CV-00460-MMD, 2013 WL 3877708, at *2 (D. Nev. July 24, 2013) (dismissing the plaintiff's "promissory estoppel claim based on her allegation that she reasonably relied on representations of the Defendant that a loan modification was under review and foreclosure would not occur."). The Court will also dismiss this claim.

### D. Leave to Amend

Plaintiff requested leave to amend any of his claims the Court decided to dismiss. (ECF No. 67 at 7-8.) Plaintiff's request does not comply with LR 15-1. Regardless, the Court will deny his request because amendment would be futile. *See, e.g. Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (affirming district court's denial of a motion for leave to amend because amendment would be futile, noting that futility is a proper basis for denying leave to amend).

To start, the Court previously granted Plaintiff leave to amend the breach of contract and breach of the implied covenant of good faith and fair dealing claims. (ECF Nos. 45, 51, 56 at 2.) Amendment of the breach of contract and implied covenant claims would also

---

[6]The Court is unpersuaded by Plaintiff's attempt to distinguish *Duarte*. (ECF No. 67 at 7.) While Plaintiff is of course correct that the *Duarte* plaintiffs relied on their counsel's representations rather than the lender's representations, unlike this case, the point of *Duarte* in this context is that a mere promise to negotiate a loan modification cannot give rise to a promissory estoppel claim despite the lender foreclosing on the property during those negotiations. *See Duarte,* 2013 WL 5236565, at *2. And that reasoning applies to the allegations in the FAC.

be futile because Plaintiff cannot—and was not able to in the FAC—show adequate consideration for the loan modification agreement. *See also supra* Section IV.A. Plaintiff was already obligated to repay the loan at the time he entered into the loan modification agreement. Continuing to pay down the loan he was already obligated to pay is inadequate consideration for a loan modification. Moreover, the lack of adequate consideration means that Plaintiff cannot allege the valid contract upon which his breach of the implied covenant claim must rely. *See also supra* Section IV.B. Thus, it would also be futile to grant Plaintiff leave to amend that claim.

Moreover, while Plaintiff has not previously been granted leave to amend his promissory estoppel claim, the Court will also dismiss that claim with prejudice because amendment would be futile. Plaintiff merely alleges he had a promise to continue negotiating a potential loan modification at the time of foreclosure, which is insufficient to state a claim for promissory estoppel as a matter of law. *See also supra* Section IV.C.

**V. CONCLUSION**

It is therefore ordered that Defendants' motion to dismiss (ECF No. 57) is granted.

DATED THIS 21st day of October 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE